**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 20-mj-259 (ZMF)** |
| | : | |
| **AMINA WASHINGTON-BEY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the Amina Washington-Bey (hereinafter, "defendant") be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

I.  **Procedural History**

On December 28, 2020, the government sought and obtained a complaint charging the defendant with Contempt in violation of 18 U.S.C. § 401(3) and with Unlawful Entry in violation of D.C. Code § 22-3302(b). At the defendant's initial appearance on December 28, 2020, the government requested a detention hearing pursuant to 18 U.S.C. § 3142 (f)(2)(A). The Court granted the government's oral motion. A detention hearing is scheduled for December 30, 2020.

The government also notified the Court of its intention to request a forensic examination pursuant to 18 U.S.C. § 4241. The Court made clear its preference to resolve the issue of detention prior to addressing the issue of competency. However, defense counsel objected to a proposed

1

forensic examination and questioned the propriety of raising the issue of competency while simultaneously alleging crimes requiring elements of intent or knowledge. The Court requested that the government provide briefing on that issue, which is provided below.

## II.   Constitutional Requirement and Background on Competency to Stand Trial

Due process "prohibits the criminal prosecution of a defendant who is not competent to stand trial" *Medina v. California*, 505 U.S. 437 (1992); *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966). The test for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him" *Dusky v. United States*, 362 U.S. 402, 402 (1960).

The test consists of two prongs. First, "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." This prong requires situational awareness, capacity, and ability to assist in trial preparation, consideration of settlement options, acceptance or rejection of settlement options, and the trial itself. *Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Godinez v. Moran*, 509 U.S. 389 (1993). Second, "whether he has a rational as well as factual understanding of the proceedings against him." This prong addresses the defendant's basic knowledge of the court proceedings, including the role of the judge, jury, prosecutor, and defense attorney. The statutory requirements and procedures for competency are set forth in 18 U.S.C. § 4241 and include, in part:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause

to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

A trial court must consider the totality of the circumstances in considering whether a competency hearing is warranted, "factors such as a defendant's irrational behavior, demeanor at trial, prior medical opinions, evidence of mental illness, and representations by defense counsel are all relevant" *Pate v. Robinson*, 383 U.S. 375 (1966).

## A.   Competency is Separate and Distinct from Mens Rea

Unlike mens rea, the competence inquiry is one of present ability, separate and distinct from the defendant's criminal culpability at the time of the alleged offenses. The government has found no case holding that criminal intent is negated by lack of competency to stand trial. Indeed, the statutory process for evaluation and competency restoration anticipates that a defendant incompetent at one point in time, may still be prosecuted and convicted. Otherwise, the remedy for incompetency to stand trial would be dismissal, not restoration. "In a competency hearing, the emphasis is on [the defendant's] capacity to consult with counsel and to comprehend the proceedings, and…this is by no means the same test as those which determine criminal responsibility at the time of the crime" *Medina v. California*, 505 U.S. 437 (1992) (quoting *Pate v. Robinson*, 383 U.S. 375 at 388-389 (1966) (Harlan, J. dissenting)).

The *Dusky* test distinguishes capacity from choice. Only capacity is relevant to the competence inquiry.  Accordingly, "a finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged" 18 U.S.C. § 4241. But the "entry of a plea of not guilty by reason of insanity…presupposes that the

defendant is competent to stand trial and to enter a plea" *Medina v. California*, 505 U.S. 437 (1992).

**B.      Defendant's Conduct and History Raise Doubt as to Competence**

On December 9, 2020 the defendant underwent an initial forensic examination by order of the Court in Case No. 20-mj-235. The evaluator was unable to form an opinion on competence due to the defendant's lack of cooperation and engagement during the evaluation. On  December 27, 2020 the defendant told officers that he was off his prescribed medication and consequently was immediately transported to the Comprehensive Psychiatric Emergency Program where he was evaluated, treated, and released back to police custody.

At the defendant's initial presentment in Case No. 20-mj-259, defense counsel opposed a forensic examination, but made no representations as to the defendant's ability to presently assist in the preparation of his own defense. Additionally, the defendant conveyed some confusion about the charges filed against him. The defendant also seemed to struggle with his responses when asked how far he got in school and his ability to read and write.

The defendant was previously found not competent for a period of time in Case No. 18-mj-62 and entered a program for competency restoration. The defendant has subsequently been found competent on multiple occasions, and on several occasions the evaluator has been unable to form an opinion on the defendant's competence. The defendant has a significant history of noncompliance with medication, repeated contact with the public mental health system, and self-harm.  Given the defendant's conduct, history, and recent noncompliance with medication, a renewed inquiry into competency is appropriate.

### III.   <u>Legal Authority and Argument on Pretrial Detention</u>

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review of the facts and circumstances in this case require the Court to conclude that the defendant is a serious risk of flight and there are no condition or combination of conditions that would assure the safety of the community and the defendant's presence at future court proceedings. Accordingly, the defendant should be held pursuant to 18 U.S.C. § 3142(f)(2).

### A.   <u>Nature and Circumstances of the Offense Charged</u>

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of pretrial detention and also demonstrates the defendant's willingness to travel to

areas that are specifically prohibited by Court order. On December 28, 2020 the government sought and obtained a complaint charging the defendant with violations of 18 U.S.C. § 401(3) (Contempt) and 22 D.C. Code § 3302(b) (Unlawful entry on property).

On December 11, 2020 a detention and competency hearing was held in Case No. 20-mj-235. The government's motion for pretrial detention was denied and the defendant was ordered released with conditions. The defendant was verbally advised of the release conditions by Magistrate Judge Robin Meriweather from the bench. An Order Setting Conditions of Release was filed that same day. The defendant was released on a number of conditions, including:

- Report for supervision to Pretrial Services weekly by phone;
- Report to Community Connections;
- Maintain Mental Health Services, to include medication regimen, as directed by Pretrial Services; and
- Stay away from the White House Complex

Magistrate Judge Meriweather notified the defendant of the bounds of the White House Complex stay away order, which includes the area bounded by and including K Street NW, 13th Street NW, Pennsylvania Avenue NW, 12th Street NW, Constitution Avenue NW, and 19th Street NW. A map of the stay away area was attached to the Order Setting Conditions of Release, filed on December 11, 2020.

After the detention hearing, it was discovered that a detainer was filed by the U.S. Parole Commission. The defendant remained in custody until a hearing was held in that matter. He was released from custody on December 21, 2020.

On December 27, 2020 at approximately 12:10 AM, United States Secret Service (USSS) Officer Jordan Blankenship was in full police uniform and on routine vehicle patrol when he responded to 725 17th Street NW in Washington, D.C. Officer Blankenship observed the defendant sitting on a bench adjacent to the New Executive Office Building. Officer Blankenship was

familiar with the defendant's history and believed that the defendant was subject to a stay away order from the area around the White House.

Officer Blankenship initiated a conversation with the defendant and asked "Do you know where you are? This is the White House." The defendant responded "Yeah, I'm just walking around." Officer Blankenship asked "You know you're not supposed to be here?" The defendant nodded.

The defendant was further identified by a Washington, D.C. identification card. Database checks were requested for the defendant through the USSS Joint Operations Center (JOC). The JOC confirmed that the defendant had an active stay away order from the area around the White House issued by the United States District Court for the District of Columbia in Case No. 20-mj-235. The defendant was inside the stay away area.

The defendant was placed under arrest and searched incident to arrest. A small canister of pepper spray was found during the search. The defendant informed officers that he was off his prescribed medication. The defendant was transported to the Comprehensive Psychiatric Emergency Program where he was evaluated, treated, and released back to police custody.

The nature of the offense charged weighs heavily in favor of pretrial detention. Less than one week after his release from custody, the defendant was off his prescribed medication and traveled to the area specifically prohibited by Court order in Case No. 20-mj-235.

### B.    Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence against the defendant, is substantial and weighs in favor of detention. The defendant has a long history of being provided warnings both by the Court and law enforcement personnel as to the specific restrictions around the White House complex and the criminal nature of any unauthorized intrusion. The defendant

has also been subject to stay away orders on numerous occasions and has repeatedly been notified of the boundaries of the stay away, both orally and in writing. In the instant case, a Secret Service Uniformed Division Officer identified the defendant sitting on a bench at 725 17th Street NW, well within the boundaries of an active stay away order set in Case No. 20-mj-235.

### C.   The Defendant's History and Characteristics

The defendant has been arrested multiple times for violating the restricted area of the White House Complex as well as for violating White House stay away orders. Indeed, the defendant has previously accepted responsibility in several instances for this conduct. Most recently, the defendant pled guilty to one count of unlawful entry of the White House and two counts of contempt for violating a White House stay away order in Case Numbers 1:20-mj-059, 1:20-mj-063, and 1:20-mj-175.  The defendant was sentenced for those matters to time-served and no period of supervised release and released on November 9, 2020.

The defendant first came to the attention of the Secret Service in or around November 2014 when he jumped a security barrier near the White House.  During an encounter in or around November 2015, the defendant was found in possession of a knife after jumping a security barrier. In 2016, the defendant was observed around the White House multiple times, and once carried a sign threatening to blow up federal buildings.  He was arrested in or around September 2016 for carrying a knife, and later absconded from a halfway house and was subsequently arrested by the Metropolitan Police Department for felony contempt.  During a hospital stay, the defendant threatened to bring a knife to the White House and hurt someone. In 2017, the defendant was arrested twice for violating White House stay away orders.

In June 2018 the defendant was arrested for jumping a fence and entering the restricted area of the White House Complex. In that case (Case No. 18-mj-62), the Court ordered the

defendant detained pending trial on account of a risk of flight. The Court noted in its written findings on detention that "Mr. Washington-Bey's prior convictions convey a troubling pattern of not complying with court orders; that is a characteristic which the Court considers in determining whether Mr. Washington-Bey would appear in court if released to the community" (ECF # 24 in Case No. 18-mj-62).

On April 5, 2020 the defendant was arrested and charged for climbing a security barrier at the White House complex. Three days later, the defendant was arrested for violating the White House stay away order that was a condition of his release. On April 10, 2020, the defendant was released on the same conditions and arrested again on April 18, 2020 for violating the White House stay away order.

On May 15, 2020, the Court denied the government's motion to revoke conditions of pretrial release in Case No. 20-mj-056, and the defendant was again released under the same conditions. On September 5, 2020 the defendant was in possession of pepper spray when he was arrested for violating the White House stay away order. The defendant has displayed remarkable failures in compliance with orders of the Court. The defendant has further failed to comply with and heed the lawful orders of USSS law enforcement personnel who regularly inform the defendant of the restrictions in place.

Additionally, the defendant has historically failed to comply with his medication regime. Despite the defendant's case manager assisting the defendant to obtain his medication after his release on or about April 14, 2020, defendant refused to take a long acting injection and then admitted to failing to take his prescription pills he was given by the doctor in lieu of the injection. While the defendant has had periods of compliance, those periods of time often coincided with periods of detention. In the interview conducted by the Secret Service on September 5, 2020 after

the defendant once again violated the White House stay away order, the defendant stated that he had not taken his medication in 2-3 days. At the time of the defendant's arrest on December 27, 2020 the defendant admitted that he was off his prescribed medication.

Additionally, the defendant currently has no fixed address and has demonstrated an unwillingness to utilize temporary housing that has been arranged for through his case worker. Prior to the defendant's arrest on November 22, 2020, he was observed over several nights in the vicinity of the White House Complex. The defendant's most recent arrest occurred shortly after midnight on December 27, 2020.

The defendant has demonstrated a disregard for laws and rules, noncompliance with medication regimens, and repeatedly traveled into areas specifically restricted by Court order. Accordingly, the defendant's history and characteristics demonstrate a significant risk of flight and weigh heavily in favor of detention.

### D.   Danger to the Community

The defendant has consistently failed to comply with Court orders, posted restrictions around the White House complex, and the orders and warnings of law enforcement. Even more concerning are the incidents during which the defendant possessed weapons or threatened violence in proximity to or in connection with the White House complex.

The defendant has carried a knife and, separately, pepper spray when entering areas restricted by statute or Court order. The defendant was observed carrying a sign threatening to blow up federal buildings. During a hospital stay the defendant made threats that he would bring a knife to the White House and hurt someone. The history of carrying weapons or threatening violence, combined with the defendant's alarmingly consistent pattern of violating the restricted

area of the White House poses a clear danger to members of the public, law enforcement, and government officials who patron the area of the White House complex.

Although there is no history of the defendant carrying out violence, it is incumbent that the danger posed by the defendant be assessed contextually. The Secret Service is not merely tasked with protecting a random park or school, but the complex that houses the President of the United States and major functions of the Executive Branch of the United States Government.  Conduct that may be considered minor in other contexts simply cannot be ignored when the backdrop is the White House Complex. The danger to the community weighs heavily in favor of pretrial detention.

## IV.   **Conclusion**

The government submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case pursuant to 18 U.S.C. § 3142(f)(2)(A). For the foregoing reasons, as well as those that will be set forth at a hearing on this matter, the government requests that the Court order the pre-trial detention of defendant.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
New York Bar Number 4444188

By: _____
MARY A. FREEMAN
Wyoming Bar No. 7-5473
Special Assistant U.S. Attorney
Federal Major Crimes
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Mary.Freeman@usdoj.gov
(202) 803-1628